## MACKEY *v.* TOWN OF LOCKE.

*(Supreme Court, General Term, Fifth Department.* December 30, 1889.)

1. **DEFECTIVE HIGHWAY—LIABILITY OF TOWN.**

    In an action against a town for injuries caused by a defect in a highway on a hillside, it appeared that the road was, at the point where the accident occurred, dangerous to travel; that the commissioner of highways had, only a short time before, inspected it, and knew of the defect, but, finding that teams could pass each other at certain points on the grade, he concluded the highway was safe, and failed to repair it. *Held,* that the town was guilty of negligence, which was not excusable on the ground that the fault of the commissioner was merely an error of judgment.

2. **SAME—CONTRIBUTORY NEGLIGENCE.**

    The question of plaintiff's contributory negligence having been determined by the jury on evidence which was positive, and substantially uncontradicted, their finding will not be disturbed.

3. **APPEAL—REVIEW—OBJECTIONS NOT RAISED BELOW.**

    Where, on direct examination, plaintiff testifies that his earnings were about $600 a year, but, on cross-examination, it appears that this estimate included the earnings of himself, his family, and his horses, and defendant thereafter makes no motion to strike out the direct testimony, it cannot be objected to on appeal.

Appeal from circuit court, Cayuga county.

Action by George Mackey against the town of Locke, for personal injuries received by reason of a defective highway. On trial by jury there was a verdict for plaintiff; and from the judgment entered thereon, and the order denying a motion for a new trial, defendant appeals.

Argued before BARKER, P. J., and MACOMBER, J.

*John W. O'Brien,* for appellant. *Hull Greenfield,* for respondent.

MACOMBER, J. A verdict for $4,000 damages was given to the plaintiff for personal injuries sustained by reason of a defective highway in the town of Locke. The accident happened on what is known as "Spafford Hill." On the 2d day of July, 1888, the plaintiff and his son were passing down this hill with a span of horses and a platform spring wagon; and, on the way from the apex of the hill, and after rounding a sharp turn in the highway, they met a buggy driven by a young lady, having her mother with her. It was apparent to all—both to those who were ascending as well as to those who were descending the hill—that at the point at which the carriages were to meet it was impossible to pass without collision. Seeing this somewhat in advance of the women, the plaintiff turned his horses off to the side, and waited until the women had driven by; and then, in attempting to turn back into the traveled portion of the highway, a serious jolt was given to the carriage, by which he was precipitated over the dash-board upon the whiffletrees, and sustained, before the horses had finally broken from him, very serious injuries. Shortly prior to this time the road is shown to have been at this place in a bad condition. At the top of the hill there was a level spot; then there was a break, from which there ran a ditch or gutter on the east side of the road. Farmers with loads were in the habit of chaining their wheels while descending the hill, and had thus cut the road out along the east wheel track, which had been greatly deepened by running water. It had been so cut down, according to some of the witnesses, at the place where this accident happened, for a distance of 18 inches to 2 feet. On the bank was some sod ground, slanting up from the wheel track at a point just above the place where these carriages met, near a beech tree. Along the west wheel track there was a ditch, 2 or 3 feet deep, filled with stones and logs and brush. At this point there was not sufficient room for teams to pass, without one of them got upon the east bank. The learned trial judge submitted to the jury the whole case, upon a full and impartial charge; giving plain instructions as to the obligations of the town and the duty of the traveler, to which no exception was taken by either side.

It was the duty of the commissioner of highways to exercise an active vigilance, to see that the highways of the defendant did not become in a dangerous condition. And it was furthermore his duty, if he discovered them to be in a dangerous condition, to make needful repairs. He was required to exercise reasonable care in keeping the highways in a condition that would afford travelers safe passage along them. That the commissioner of highways knew that this portion of highway under his control was dangerous to public travel before the time of this accident admits of no reasonable doubt, under the testimony given. Why the necessary repairs were not made, remains still a matter of conjecture. Whether or not the plaintiff, in passing down the hill, exercised all the care and prudence which is to be exacted of a reasonably careful man, under like circumstances, was, under the evidence, solely a question for the jury; and their determination of it, being supported by positive evidence, and being substantially uncontradicted, ought not to be disturbed. It is argued by counsel for the appellant, inasmuch as the highway commissioner had inspected the road shortly before the accident, and had found that teams could pass at certain places thereon, and so regarded the highway as safe, that his fault, if any, was merely an error of judgment, and that no recovery could be had for that reason. He cites, in support of such proposition, the case of *Lawson* v. *Woodstock*, 20 Wkly. Dig. 570. There is nothing, however, in that authority which would bear out the proposition named. In that case an adequate bridge was built over a stream; and the plaintiff in that action was himself the sole cause of breaking the supports or braces of the bridge, by careless handling of his own load, in such a way as to weaken it. That bridge was shown to have been of sufficient dimensions for ordinary and usual traffic; but in that particular instance the plaintiff undertook to carry across it a huge stone, which was too wide, and which, a moment's inspection would have shown him, could not have been safely carried across the bridge. The court merely held that there could be no claim of liability against the town simply because the highway commissioner had built a bridge of the dimensions given, and not one designed to carry the extraordinary load which was attempted to be transported on that occasion.

The only serious question in the case arises under another proposition by the counsel for the appellant, that the plaintiff was permitted to testify what his share of the income was from the farm which he worked on shares. It is argued that, inasmuch as this income was derived from the joint service of himself, his wife, his two sons, and his horses, the loss of that income would not be any part of the measure of damages to which the plaintiff is entitled. If the case bore out the facts assumed in this argument to exist, undoubtedly a serious error was committed, which would require us to grant a new trial. The evidence is as follows: The plaintiff testified: "Before the accident, I used to do all kinds of work on the farm. In pitching and haying, I was the head man. I worked the farm, on shares, for Litchworth. *Question.* What share did you have? (Objected to by defendant's counsel as incompetent and irrelevant. Objection overruled, and defendant excepted.) *Answer.* I had one-half. *Q.* What had been your share of the proceeds of the farm for the last five or six years? (Objected to. Objection sustained.) *Q.* What was your time, labor, and services worth to you, by the year, before you were injured? *A.* I always had to keep a debit and credit— *Court.* Estimate in your own way, and tell us, what, in your judgment, your own work, labor, and time were worth to you before this accident. *A.* I think it was worth six hundred dollars a year. Some years we turn a dood deal more, and others not so much. (Defendant's counsel moved to strike out the answer, on the ground that it was not responsive, and also that the witness was merely stating his share of the profits of the farm. Motion denied, and defendant excepted.)" Up to this point, it will be seen that the witness had been called upon for, and had apparently given, only what the value of his own work and time were worth.

The defendant's counsel evidently had a suspicion that the plaintiff was making an attempt to claim for himself the profits of the labor of others, as well as his own. But there is nothing in the question put, nor in the answer, which necessarily leads to that conclusion. Nevertheless, on the cross-examination it appears that the suspicion of defendant's counsel was correct; for the plaintiff is asked as follows: "*Question.* In stating what your services were worth, you estimate the profit you made on the farm when you stated it at six hundred? *Answer.* That was our share of what we got off of the farm." Had a motion then been made by defendant's counsel to strike out the previous answer, after it was disclosed that the plaintiff intended so to include the time and services of others than himself, the same, undoubtedly, would have been granted by the court. But it was not made; and we are unable to see that the defendant is in a position to avail himself of the point now attempted to be made. These views cover the several points made by the learned counsel for the appellant, and lead to an affirmance of the order. The order is affirmed, with costs, and judgment directed for the plaintiff on the verdict.